NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

September 16, 2025

Adrian Jawaun Johnson
Johnson & Associates, PC
1 Tower Center Blvd., Suite 1510
East Brunswick, NJ 08816
*Counsel for Plaintiff Robert A. Baker, Jr.*

Scott W. Parker
Parker Ibrahim & Berg LLP
270 Davidson Ave., 5th Floor
Somerset, NJ 08873
*Counsel for Defendant Central Loan Administration & Reporting FSB*

**LETTER OPINION FILED WITH THE CLERK OF THE COURT**

    **Re:**    ***Baker v. Central Loan Administration & Reporting FSB, et al.***
           **Civil Action No. 25-1696 (SDW) (SDA)**

Counsel:

    Before this Court is Defendant Central Loan Administration & Reporting FSB's ("Cenlar" or "Defendant") Motion to Dismiss (D.E. 10 (the "Motion")) the Complaint filed by Plaintiff Robert A. Baker (D.E. 1 ("Compl.")) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons stated below, Defendant's Motion is **GRANTED** and the Complaint is **DISMISSED WITHOUT PREJUDICE**.

**BACKGROUND & PROCEDURAL HISTORY**[1]

    Plaintiff Robert A. Baker, Jr. ("Plaintiff") is the borrower on a residential mortgage loan serviced by Cenlar. Plaintiff alleges Cenlar sent him a foreclosure notice stating he was six months behind on mortgage payments. (Compl. ¶ 8.) Plaintiff contends this notice was false, as he had previously provided Cenlar with bank statements showing that the payments had been withdrawn from his account. (*Id.* ¶ 9.)

---

[1] The facts in this section are drawn from the Complaint and are presumed true for the purposes of deciding this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff further alleges that in September 2023, he obtained a grant through the New Jersey Emergency Rescue Mortgage Assistance program, which was applied to his account and temporarily halted foreclosure proceedings. (*Id.* ¶¶ 16–19.) In January 2024, Plaintiff set up an auto-pay arrangement with Cenlar, under which his mortgage payments were automatically withdrawn from his bank account. (*Id.* ¶ 22.) Although payments cleared for January and February 2024, Cenlar allegedly reversed the March 2024 payment, forcing Plaintiff to submit it manually. (*Id.* ¶ 23.) Plaintiff claims that similar issues persisted in April and May 2024, when Cenlar imposed a restriction preventing electronic payments. (*Id.* ¶ 24.) Cenlar allegedly required Plaintiff to remit payments only by bank or cashier's check. (*Id.* ¶ 25.)

Plaintiff maintains that he visited a local branch of his bank, where a manager confirmed that no reversals had occurred on his account and that sufficient funds were available for each withdrawal. (*Id.* ¶ 26.) Plaintiff also states that during a conference call with Cenlar, he provided documentation verifying his account balance, but Cenlar continued to enforce the payment restriction. (*Id.* ¶¶ 27–28.) Plaintiff included attorney Vincent Ansetti in correspondence with Cenlar regarding removal of the restriction, but alleges that his efforts to contact Ansetti went unanswered. (*Id.* ¶¶ 30–32.)

Based on these events, Plaintiff asserts three claims against Cenlar: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., alleging misrepresentations concerning the status of his debt and failure to validate it; (2) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, alleging Cenlar failed to adequately respond to his inquiries and mishandled his account; and (3) negligence, alleging that Cenlar owed a duty of care in servicing his loan and breached it by reversing payments, imposing restrictions, and failing to correct account errors. Plaintiff also names Ansetti & Associates, LLC and Vincent M. Ansetti as defendants, though the docket reflects that these parties have not yet been served.

Plaintiff filed the Complaint on March 6, 2025. On June 4, 2025, Defendant filed the Motion. Plaintiff filed an opposition on July 7, 2025 (D.E. 11), and Defendant replied on July 14, 2025. (D.E. 12.) As Defendant correctly notes, Plaintiff's opposition was filed two weeks later than the deadline. This Court nonetheless exercises its discretion to consider the untimely opposition and resolves the Motion on the merits.

**DISCUSSION**

  A. FDCPA

Under 15 U.S.C. § 1692k(d), an action under the FDCPA "may be brought … within one year from the date on which the violation occurs." In *Rotkiske v. Klemm*, the Supreme Court confirmed that this one-year limitations period begins to run when the violation occurs, not when it is discovered. 589 U.S. 8. While Plaintiff does not allege exactly when he received the notice that is the subject of the FDCPA claim, the context of the Complaint makes it clear that he received it no later than September 19, 2023. The Complaint was filed on March 6, 2025, well more than one year later than the latest possible date. Thus, the FDCPA claim is time-barred under *Rotkiske*.

Plaintiff attempts to avoid the limitations bar by invoking a "continuing violation" theory, a theory that the Third Circuit has failed to extend to these circumstances. *See Schaffhauser v. Citibank (S.D.) N.A.*, 340 F. App'x 128, 131 (3d Cir. 2009). Because Plaintiff's allegations also do not include any properly pleaded facts of fraudulent concealment or other equitable basis, Plaintiff cannot overcome the statute of limitations.

Even if the FDCPA claim were timely, Plaintiff fails to allege specific statutory violations. The FDCPA requires more than stating that a notice was sent; the complaint must specify which section(s) were violated, identify the content (or omission) of communications that allegedly violate the FDCPA (e.g., misrepresentations, improper threats, lack of validation, etc.), and show how Defendant's conduct falls within those prohibitions under FDCPA. Under *Iqbal/Twombly*, conclusory allegations are insufficient to make out a plausible claim.

Accordingly, Plaintiff's FDCPA claim is dismissed.

B. RESPA

At the outset, Plaintiff's RESPA claim fails because the Complaint does not explicitly state which provision of the statute Cenlar allegedly violated. Plaintiff argues in opposition that the Complaint adequately alleged a § 2605(e) violation. While it is axiomatic that an opposition brief cannot work to amend the pleadings, this Court will move forward with the analysis to provide finality to the parties.

To state a claim under RESPA § 2605(e), a plaintiff must allege "(1) the submission of a qualified written request ["QWR"] by a borrower to a loan servicer; (2) a failure by the loan servicer to timely respond; and (3) damages." *Hawk v. Carrington Mortg. Servs., LLC*, Civ. No. 14-1044, 2016 WL 4414844, at *4 (M.D. Pa. June 23, 2016), report and recommendation adopted, 2016 WL 4433665 (M.D. Pa. Aug. 17, 2016). Plaintiff does not allege facts sufficient to identify a valid QWR. The correspondence referenced is vague, lacking the required specificity regarding the account, the particular errors, or demands for corrections or disclosures as required by § 2605(e)(1)(B).

Even if there was some communication, Plaintiff does not plead that Cenlar failed to respond in the time required, or that any response was deficient in a manner that violates RESPA. Also, the damages alleged are conclusory: general "financial losses," "emotional distress," and attorney's fees, none of which are tied concretely to a failure to respond to a QWR. Under RESPA, actual damages are required. *See Hutchinson v. Delaware Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006) ("[A]lleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages.")

Accordingly, Plaintiff's RESPA claim must be dismissed for failure to state a claim.

C. Negligence and Economic Loss Doctrine

Under New Jersey law, the economic loss doctrine prohibits tort recovery of purely economic losses in negligence where the loss arises from a contract, unless there is an independent

duty apart from the contract. *Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A.*, 801 F.3d 347, 354 (3d Cir. 2015); *see Perkins v. Washington Mutual, FSB*, 655 F. Supp. 2d 463, 471 (D.N.J. 2009). Plaintiff's negligence claim does not allege an independent tort duty distinct from the contractual servicing obligations. The damage alleged is purely economic, with no property damage or personal injury. Thus, the economic loss doctrine bars the negligence claim.

D. Leave to Amend and Unserved Defendants

Dismissal is granted without prejudice, with leave to file an Amended Complaint within 30 days of this decision. If Plaintiff fails to amend within that period, the Complaint will be dismissed with prejudice as to all defendants.[2]

**CONCLUSION**

For the foregoing reasons, Defendant's Motion is **GRANTED**, and the Complaint is **DISMISSED WITHOUT PREJUDICE**. An appropriate order follows.

                */s/ Susan D. Wigenton*
                **SUSAN D. WIGENTON, U.S.D.J.**

Orig:  Clerk
cc:    Stacey D. Adams, U.S.M.J.
        Parties

---

[2] Two named defendants, Ansetti & Associates, LLC and Vincent M. Ansetti, Esq., are unserved as to the original complaint. Under Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time." If an Amended Complaint asserts claims against the unserved defendants, Plaintiff must properly effect service in accordance with Rule 4(m) and all applicable Local and Federal Rules. If Plaintiff chooses not to file an Amended Complaint, this opinion shall serve as formal notice that the Court intends to dismiss the two unserved defendants with prejudice after 30 days from this decision, unless proof of service is filed during that timeframe.